

# THE ATTORNEY GENERAL
## OF TEXAS
### AUSTIN 11, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

August 15, 1947

Hon. H. D. Dodgen, Executive Secretary
Game, Fish and Oyster Commission
Austin, Texas

Opinion No. V-346

Re: Authority of Game, Fish
and Oyster Commission to
pay for laying a sewerage
line from their Marine
Laboratory to a connec-
tion with the existing
sewerage line of the City
of Rockport, Texas, and
a related question.

Dear Sir:

This opinion is in response to your request
therefor, dated July 14, 1947, which reads as follows:

"This department is now proceeding
with the construction of a marine labor-
atory at Rockport, Texas, the building
being erected on property owned by the
Navigation District at Rockport under
permanent easement granted by said dis-
trict about two years ago.

" . . . The present city's sewerage
line is several hundred feet from the
location where our laboratory building
is being erected. It is informally re-
ported to me that the City of Rockport
does not have sufficient funds to build
a sewerage line from the present line to
meet our property, and in this event we
will be without sewerage connection un-
less the line is laid at the expense of
this department.

"1. Can the Game, Fish and Oyster
Commission legally bear the cost of lay-
ing said sewerage line from the labora-
tory location connecting with the city

line after gaining easement rights on the intervening property?

"2. If the answer to the first question is in the affirmative, may the Game, Fish and Oyster Commission legally turn over to the City of Rockport said sewerage line to be maintained and operated by allowing the City of Rockport to apply their regular sewerage connection charge against the cost this department will bear of laying the line until such time as the cost of this connection has been amortized?"

Article 4030, V. C. S., reads as follows:

"All funds collected by the Game, Fish and Oyster Commission . . . shall be placed in the State Treasury to the credit of a fund to be known as 'Fish and Oyster Fund' and, together with the money now to the credit of this fund, is hereby appropriated and shall be used by the Game, Fish and Oyster Commissioner in the enforcement of the fish and oyster laws of this State, and in the dissemination of useful information pertaining to the economic value of fish and oyster marine life; the making of scientific investigations and surveys of the principal sea food fishes and marine life for purpose of the better protection and conservation of same, the propagation and distribution of sea food fishes, oysters, and other marine life; the purchase, repair and operation of boats and the employment of deputies to carry out and enforce the provisions of this Act." (Emphasis supplied).

The appropriation bill for the biennium beginning September 1, 1947, after providing specific appropriations for the Game, Fish and Oyster Commission, contains a rider attached thereto which reads, in part, as follows:

"The foregoing specific amounts, or as much thereof as may be used, are hereby appropriated for the purposes above enumerated and shall be paid out of either the Special Game and Fish Fund or the Medina Lake Fund,

and all money to the credit of these special
funds on hand in the State Treasury on September 1, 1947, together with the current revenues to be derived and placed to the credit
of these special funds during the next ensuing two years ending August 31, 1949, are
hereby appropriated for the purpose of protecting, purchasing, propagating, trapping,
distributing and improving the wild life resources of this State; for the creation, leasing, purchase and maintenance of game sanctuaries, public hunting grounds and public
fishing grounds; for the dissemination of information pertaining to the conservation, propagation, distribution and economic value of
the wild life resources of this State; for
the purpose of purchasing land; for the construction, maintenance and operation of fresh
water fish hatcheries and rearing ponds; for
the purpose of providing living quarters and
maintenance of same for fish hatchery superintendents, assistant fish hatchery superintendents; for the making of scientific investigations and surveys of marine life; . . ."
(Emphasis supplied).

Opinion No. O-6935, of this department, which
was addressed to you, construed a rider on the appropriation bill for the biennium ending August 31, 1947,
to the effect that the Game, Fish and Oyster Commission
may expend moneys to construct a building to house a
Marine Laboratory.

Inasmuch as your proposed construction and
maintenance of "several hundred feet" of sewerage line
to connect with the sewerage system of Rockport, Texas,
is necessary and essential to the proper functioning of
a Marine Laboratory, its construction is authorized by
virtue of the same authority by which you secured the
perpetual easements to the land upon which the Marine
Laboratory is situated, and also by virtue of the authority by which the Marine Laboratory itself is being
constructed. This authority was discussed in Opinion
O-6935.

Article 4030, V. C. S., authorizes the Commission to use funds for "the making of scientific investigations and surveys of the principal sea food fishes and marine life for purpose of the better protection

and conservation of same." This statute has been previously interpreted by this department in Opinion O-7262 as authorizing the construction by the Commission of a Marine Laboratory building, and the purchase of land on which to erect such building. In that opinion the decision of the Texas Supreme Court, in Herring vs. Houston National Exchange Bank, 269 S. W. 1031, was followed, wherein the Court held that the prison commission, having authority to purchase a mill plant, had implied authority to purchase the land upon which the mill was located.

Your first question is therefore answered in the affirmative.

As to question 2, Article 666a-1, providing for sale of property required by the Game, Fish and Oyster Commission, reads as follows:

"Sec. 1. All property belonging to the State purchased from funds appropriated to the State Game, Fish and Oyster Commission, when it shall become unfit for use or shall be no longer needed, shall be sold by the State Board of Control at public auction, after advertising it for not less than fifteen (15) days prior to date of any sale, in two newspapers published in the county where sale of such property is made.

"Sec. 2. The money from the sale of any such property, less the expense of advertising and selling, shall be deposited in the State Treasury to the credit of the fund out of which the purchase money for the property sold, was paid. Acts 1935, 44th Leg., p. 661, ch. 276."

No authority providing any other procedure for the sale of property acquired by the Commission can be found, and no provision is indicated in Article 666a-1 authorizing the disposal you propose, which would preclude its use.

Your second question is therefore answered in the negative.

## SUMMARY

The Game, Fish and Oyster Commission is authorized to pay for laying a sewerage line from its Marine Laboratory adjacent to Rockport, Texas, connecting with the city line, after gaining easement rights from the intervening property. Article 4030, Vernon's Civil Statutes; Acts 50th Leg., 1947, S. B. 391, page 842; Attorney General's Opinion O-6935.

The Game, Fish and Oyster Commission has no authority to apply the sewerage connection charge of the City of Rockport against the cost of laying the sewer by the Commission in order ultimately to turn the sewer over to the City.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By

Dean J. Capp
Assistant

BJC:jmc

APPROVED:

FIRST ASSISTANT.